IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TEGRA C., | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-19-667 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[1] | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

On March 4, 2019, Tegra C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 11, 12), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 11) and Defendant's Motion for Summary Judgment (ECF No. 12) are DENIED, the decision of the SSA is REVERSED IN PART, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On May 9, 2016, Plaintiff filed a Title II application for SSI, alleging disability beginning on January 1, 2015. She later voluntarily amended the alleged onset date to May, 6, 2016. ECF No. 10 at 33. Her claims were denied initially and upon reconsideration on June 30, 2016 and

---

[1] Currently, Andrew Saul serves as the Commissioner of the Social Security Administration.

1

December 23, 2016, respectively. Subsequently, on January 24, 2017, Plaintiff filed a written request for a hearing and, on January 5, 2018, an Administrative Law Judge ("ALJ") presided over a video hearing. On April 12, 2018, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act [(the "Act")] since May 9, 2016, the date the application was filed." ECF No. 10 at 16. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination, and on January 10, 2019, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On March 4, 2019, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On August 7, 2019, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on October 2, 2019. Plaintiff did not respond to Defendant's motion and the time to do so has since passed.[2] This matter is now fully briefed, and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not

---

[2] On November 6, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective

medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since May 9, 2016, the application

date." ECF No. 10 at 18. At step two, the ALJ found that Plaintiff had the following severe impairments: "affective disorder and substance addiction disorder (opiate dependence and alcohol)." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 19. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to performing simple and routine tasks. She can also understand and remember short, and simple instructions. Further, she cannot perform tasks at a production rate pace. In addition, she can make simple work-related decisions. She can also occasionally interact with the public, co-workers and supervisors.

*Id.* at 21. The ALJ then determined that Plaintiff had no past relevant work. *Id.* at 24. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from May 9, 2016, the date the application was filed." *Id.* at 25.

## DISCUSSION

Plaintiff raises several allegations of error on appeal: (1) the ALJ erred by failing to classify all Plaintiff's impairments as severe, (2) the ALJ assigned improper weight to the medical opinion evidence, and (3) the ALJ's finding that Plaintiff could not perform work "at a production rate pace" violates the Dictionary of Occupational Titles ("DOT"). The Court disagrees with the first two arguments, but the third argument has some merit. In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. Each alleged error is addressed below.

7

### 1. The ALJ Did Not Err at Step Two of the Sequential Evaluation.

Plaintiff first challenges the ALJ's failure to classify as severe her learning disability, obesity, cirrhosis, anemia, and schizoaffective disorder at step two of the analysis and the resulting failure to address these impairments in the RFC analysis. ECF No. 11-1 at 8–9. The Court disagrees.

Step two requires "a threshold determination of whether a [plaintiff] is suffering from a severe impairment or a combination of impairments." *Lewis v. Comm'r of Soc. Sec.*, SAG-15-84, 2015 WL 5905276, at *2 (D.Md. Oct. 6, 2015) (citing *Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987)). "If a [plaintiff] is found to be suffering from a severe impairment(s), the analysis simply proceeds to the next step." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). When a plaintiff makes a "threshold showing that other disorders constituted severe impairments" and "the ALJ continued with the sequential evaluation process," an ALJ's failure to find an additional impairment nonsevere is harmless. *Davis v. Comm'r, Soc. Sec. Admin.*, SAG-12-813, 2013 WL 1124589, at *1 (D.Md. Mar. 18, 2013).

At step two, the ALJ found Plaintiff had severe impairments of affective disorder and substance addiction disorder. ECF No. 10 at 18. The ALJ then found that Plaintiff had nonsevere impairments of diabetes mellitus, Hepatitis C, and schizoaffective disorder. *Id.* She made sure to specify in her opinion that she "still considered any symptoms [Plaintiff] has from her non-severe impairments, combined with all the symptoms from her severe impairments when determining [Plaintiff's RFC]." *Id.* Finally, the ALJ acknowledged that Plaintiff alleged impairments of back pain, lead paint exposure, and post traumatic stress disorder. *Id.* at 19. After reviewing the medical evidence, however, the ALJ found that there was no "evidence from an acceptable medical source" establishing the existence of any of these impairments. *Id.*

8

Plaintiff particularly points to the ALJ's failure to consider her learning disability in the analysis. There is no definitive evidence on the record, however, that Plaintiff has a learning disability. Plaintiff did not list a learning disability in her Disability Reports either initially or on appeal. *See* ECF No. 10 at 178, 184, 221. She also did not mention a learning disability in her Adult Function Report. *See id.* at 206. The school records she provided do reflect poor grades but also a high number of absences, and they are devoid of any mention of a learning disability. *See id.* at 238–95. In Plaintiff's psychiatric report, Dr. Nicola G. Cascella does reference that Plaintiff has "learning problems," but Dr. Cascella does not elaborate further to establish a disability. *Id.* at 472. Accordingly, the ALJ did not err in failing to enumerate a learning disability as one of Plaintiff's impairments.

Because the ALJ found other severe impairments at step two of her analysis, the ALJ's failure to classify more of Plaintiff's impairments as severe is no basis for remand. Furthermore, the ALJ specified at step two and also at the beginning of her RFC analysis that she considered all Plaintiff's symptoms in her report, and not just those she classified severe. *Id.* at 18, 21. Accordingly, the ALJ did not err at step two of her evaluation.

## 2. The ALJ Appropriately Weighed the Medical Opinion Evidence.

Plaintiff next contends that the ALJ's RFC finding was not supported by substantial evidence. Specifically, Plaintiff argues "[t]here is no medical opinion evidence from any mental health professional that supports the proposition that [Plaintiff] can work." ECF No. 11-1 at 5. The Court disagrees.

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. §§ 404.1545(a), 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL

374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184).

Regarding the ALJ's evaluation of the medical opinion evidence, under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen [the patient] a number of times

and long enough to have obtained a longitudinal picture of [the patient's] impairment, [the SSA] will give the medical source's medical opinion more weight than [it] would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1).

If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating source's opinion: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011).

Plaintiff argues that the ALJ should have given treating physician Dr. Harini Balu's opinion more weight than the opinions of non-treating physicians. The ALJ, however, was very thorough in explaining the allocation of weight she gave to each physician's opinion. Regarding Dr. Balu specifically, the ALJ stated that although Dr. Balu was Plaintiff's treating physician, her opinion was given little weight because it was "inconsistent with the minimal mental limitations contained in the medical evidence of record." ECF No. 10 at 23. The ALJ noted that Dr. Balu concluded

11

that Plaintiff's "paranoia and auditory hallucinations" would make it difficult for Plaintiff to work, but Plaintiff's "treatment notes do not[] indicate there is any evidence of hallucinations in the medical evidence of record," and Plaintiff herself "denied experiencing hallucinations." *Id.* Furthermore, the ALJ found that Dr. Balu's opinion was inconsistent with Plaintiff's statements on her Adult Function Report and even contradicted her own treatment records. *Id.* at 23–24. Although Dr. Balu was Plaintiff's treating physician, the ALJ was entitled to give her opinion less weight, as it was not supported by clinical evidence and was inconsistent with other substantial evidence. *See Lewis*, 858 F.3d at 867. The ALJ also complied with 20 C.F.R. §§ 404.1527(c) in giving Dr. Balu's opinion less weight, because she articulated the evidence, or lack thereof, supporting Dr. Balu's opinion, its inconsistencies with the record, and other factors that contradict the opinion. Accordingly, the ALJ did not err in the weight she afforded Dr. Balu's opinion.

The ALJ was equally thorough in explaining why she did give other physicians' opinions more weight. Regarding Dr. Yamir Laboy, Dr. M. Ahn, and Dr. Nicola Cascella, the ALJ specifically pointed to their opinions' consistency with Plaintiff's own statements in various reports and at her hearing, as well as to their consistencies with the medical evidence of record. ECF No. 10 at 23. Accordingly, the ALJ did not err in the weight she afforded other physicians' opinions.

### 3. The ALJ's Erred in Her Use of the Term "Production Rate Pace."

Finally, Plaintiff alleges that the ALJ erred in imposing an RFC limitation that Plaintiff could not "perform tasks at a production rate pace" because "production rate pace" is not defined in the DOT. The Court agrees.

Plaintiff challenges the ALJ's use of the limitation "cannot perform tasks at a production rate pace." Plaintiff is correct that the term "production rate pace" is not defined in the DOT.

Plaintiff points to the Fourth Circuit's opinion in *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), to bolster its argument that the ALJ's use of this term is a basis for remand. In *Thomas v. Berryhill*, the Fourth Circuit found that the underlying ALJ's analysis "fail[ed] to provide a logical explanation of how she weighed the record evidence and arrived at her RFC findings." 916 F.3d at 311. Specifically, the ALJ (1) did not give specific conclusions regarding the claimant's ability to perform during a full workday, (2) did not sufficiently explain how she weighed evidence of the claimant's mental health treatment, (3) erred in her function-by-function analysis, and (4) did not provide the court "enough information to understand" the restriction that claimant "could not perform work 'requiring a production rate or demand pace.'" *Id.* at 311–12. The Fourth Circuit found that "[c]ombined, the above-listed missteps in the ALJ's RFC evaluation frustrate our ability to conduct meaningful appellate review." *Id.* at 312.

In interpreting *Thomas v. Berryhill*, this Court has encountered two categories of scenarios regarding an ALJ's use of "production rate pace," or similar terms: scenarios in which the ALJ provided a definition for the term, and scenarios in which the ALJ did not. In *Teresa B. v. Commissioner, Social Security Administration*, SAG-18-2280, 2019 WL 2503502 (D.Md. June 17, 2019), the ALJ in the underlying decision "included an RFC provision limiting Plaintiff to 'no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)." *Id.* at *2. The Court in this case found that the ALJ's use of "production-rate pace" was acceptable because he included a definition for the term immediately thereafter. *Id.* On the other hand, In *Travis X. C. v. Saul*, GJH-18-1210, 2019 WL 4597897 (D.Md. Sept. 20, 2019), the ALJ in the underlying decision included an RFC provision that the plaintiff "can perform jobs consisting of simple (1- to 3-step tasks), routine, and repetitive tasks, in a work environment without production rate pace." *Id.* at *2. The

ALJ in that case did not include a definition or explanation of what he meant by "production rate pace." *Id.* at *5. The Court, therefore, found "the ALJ did not provide the proper 'logical bridge'" to support his use of the term "production rate pace," and the Court was "left to guess" the basis of the term, warranting remand. *Id.*

Plaintiff appears to categorize her challenge to the term "production rate pace" as a step five error, though it is more aptly categorized as a challenge to whether the Plaintiff's RFC is supported by substantial evidence. This case is more analogous to *Travis X. C.* than to *Theresa B.* The ALJ failed to provide a definition, explanation, or anything else serving as a "logical bridge" to unlock the meaning of her use of the term "production rate pace." Accordingly, the ALJ erred by failing to elaborate on this term, and remand is warranted.

## CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from May 9, 2016, through the date of the ALJ's decision. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 11) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 12) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 10 December

A. David Copperthite
United States Magistrate Judge